[Cite as *In re C.G.*, 2023-Ohio-3857.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:

    C.G. aka

    G.C.

JUDGES:
Hon. W. Scott Gwin, P.J.
Hon. John W. Wise, J.
Hon. Andrew J. King, J.

Case No. 2023 CA 26

O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Court of Common Pleas, Juvenile Division, Case No. 2021 AB 0081 |
| JUDGMENT: | Reversed and Remanded |
| DATE OF JUDGMENT ENTRY: | October 24, 2023 |

APPEARANCES:

For Appellee

R. KYLE WITT
PROSECUTING ATTORNEY
GENYLYNN COSGROVE
ASSISTANT PROSECUTOR
239 West Main Street, Suite 101
Lancaster, Ohio 43130

Guardian ad Litem

THOMAS GORDON
3135 Sun Valley Drive
Pickerington, Ohio 43147

For Appellant Mother

DAVID TAWNEY
117 West Main Street,
Suite 208
Lancaster, Ohio 43130

For Father

ZACHARY MERANDA
33 West Main Street
Newark, Ohio 43055

*Wise, J.*

{¶1}    Appellant, J.W., appeals the decision of the Fairfield County Court of Common Pleas, Juvenile Division, which terminated Appellant's parental rights and granted Fairfield County Department of Job and Family Services' ("Agency") motion for permanent custody of C.G. The following facts give rise to this appeal.

## FACTS AND PROCEDURAL HISTORY

{¶2}    C.G. was born on June 17, 2021. Appellant is the biological mother of C.G. B.G. is the biological father ("Father").

{¶3}    On June 18, 2021, the Agency received a report of abuse as C.G. tested positive at birth for suboxone.

{¶4}    On August 31, 2021, C.G. was found to be a dependent minor and placed into the temporary custody of the Agency.

{¶5}    On November 14, 2022, the Agency filed a motion requesting they be granted permanent custody of C.G.

{¶6}    On March 13, 2023, the trial court held a hearing on the motion for permanent custody.

{¶7}    First, Appellant testified that she is the mother of C.G. She was already involved with the Agency when C.G. was born, as C.G.'s sibling U.G. ingested her prescription medication. Appellant had five children involved with the Agency when C.G. was born. The Agency eventually obtained permanent custody of her other five children for her lack of compliance with her case plan.

{¶8}    Appellant testified she had a relapse in February of 2022 when she had an overdose. After her relapse she entered inpatient treatment in April of 2022 and was

discharged in August of 2022. From inpatient treatment she went to Southern Hope, a sober living and inpatient facility. She was then briefly at another facility she did not feel safe at and transferred to Spectrum Outreach in October of 2022.

{¶9} Appellant recently moved into a new home with B.G. Both are employed, and Appellant recently got hired full time at a retail store at a higher wage. She will have a second, part-time job where she can work hours as necessary. Appellant admitted there was violence between her and B.G. in the past which led to Agency involvement.

{¶10} Appellant and B.G. have had unsupervised visits with C.G. She believes they are going well, and C.G. is bonding with her.

{¶11} Appellant testified that since entering inpatient treatment in April of 2022, she has not tested positive for any controlled substance other than what she is prescribed.

{¶12} Next, B.G. testified that he is C.G.'s father. He testified he had three children with Appellant at the time C.G. was born. All three were involved with the Agency. B.G. said he did not have good compliance with the other three children's case plan. He was incarcerated when C.G. was born, serving a sentence of about four months. He is not sure what he was incarcerated for, either drug use or violating probation.

{¶13} B.G. was incarcerated again at the end of 2021 for about a month or two for a felony drug possession charge. Upon release, he entered inpatient treatment. He was there for roughly six months. He then went to sober living for a couple of months. He then enrolled in Spectrum. In order to work on preventing domestic violence, B.G. and Appellant have set boundaries. He completed a batterer's intervention program and participates in counseling. He and Appellant are also engaged in parenting classes. He

is working at Taco Bell right now. They have been in their current residence for a week. The rent is about $800 per month.

**{¶14}** Since entering his inpatient program, B.G. has had no positive drug screens. He is up for a promotion at his job, and his visits with C.G. have been going well.

**{¶15}** Morgan Furness then testified that she is the caseworker employed by the Agency. C.G. has been in foster care since his birth. Appellant and B.G. do not have custody of any of their other children. At the beginning of temporary custody there was a lack of involvement by either parent with the case plan.

**{¶16}** Since Appellant started inpatient treatment, she has complied with her case plan. The Agency paid Appellant and B.G.'s first month rent in their new residence. Appellant has continued her substance abuse counseling and random screening. She also is in therapy for her mental health. There are no safety concerns with their new residence, and it is appropriate for a child.

**{¶17}** B.G. was not active in his other children's case plan. Upon leaving incarceration a second time, he entered inpatient treatment and has been compliant with the case plan.

**{¶18}** Ms. Furness then testified about the concerns the Agency holds. The Agency is worried about maintaining their recovery outside of a heavily structured environment, maintaining housing of their own, and the potential return of domestic violence into the home. The Agency would need a longer period of time to observe in order to make this determination.

**{¶19}** The Agency has had temporary custody of C.G. since his birth. He turned two this year. The Agency has noted no concerns with the parents' interaction with C.G.

**{¶20}** During observation of C.G. with the foster parents, the Agency noted all his basic needs are being met. He is comfortable in his environment. He has bonded with his foster parents and the other children in the home.

**{¶21}** On cross-examination, Ms. Furness stated that Appellant has had a longer period of compliance with her case plan than non-compliance. The Agency did not attempt to arrange any overnight visits for C.G. with either parent while in sober living.

**{¶22}** Last, the Guardian ad Litem, Thomas Gordon, testified he had been with the family since the case with the older children first opened. The Guardian ad Litem filed a report with the trial court recommending the Agency not be granted permanent custody of C.G. He observed the parents with C.G. ten times, and every time, Appellant and B.G. were appropriate with C.G. The Guardian ad Litem also saw C.G. with his foster family. They took very good care of him, and C.G. enjoys being with them. The Guardian ad Litem would recommend the parents receive more time to show they can maintain a sober, safe, and stable living arrangement.

## ASSIGNMENTS OF ERROR

**{¶23}** Thereafter, Appellant timely filed her notice of appeal. She raises the following two Assignments of Error:

**{¶24}** "I. THE TRIAL COURT ERRED IN FINDING THAT THE MINOR CHILD COULD NOT BE PLACED WITH THE APPELLANT WITHIN A REASONABLE LENGTH OF TIME.

**{¶25}** "II. THE TRIAL COURT ERRED IN FINDING THAT THERE WAS SUFFICIENT EVIDENCE TO GRANT THE MOTION FOR PERMANENT CUSTODY."

**{¶26}** For the sake of judicial economy, we will address the assignments of error out of order.

**II.**

**{¶27}** In Appellant's second Assignment of Error, Appellant argues the trial court erred in finding there was sufficient evidence to grant Appellee's motion for permanent custody. We agree.

**{¶28}** "[T]he right to raise a child is an 'essential' and 'basic' civil right. *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). An award of permanent custody must be based on clear and convincing evidence. R.C. §2151.414(B)(1). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id*. at 477, 120 N.E.2d 118. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

**{¶29}** Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties'

demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 1997-Ohio-260, 674 N.E.2d 1159.

### Requirements for Permanent Custody Awards

**{¶30}** R.C. §2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. §2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶31}** Following the hearing, R.C. §2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b)      The child is abandoned.

(c)      The child is orphaned and there are no relatives of the child who are able to take permanent custody.

(d)      The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division D(1) of section 2151.413 of the Revised Code, the child was previously in the temporary agency in another state.

(e)      The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected or dependent child on three separate occasions by any court in this state or another state.

**{¶32}** Therefore, R.C. §2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the circumstances delineated in R.C. §2151.414(B)(1) is present before proceeding to a determination regarding the best interest of the child.

**{¶33}** In the case *sub judice*, the trial court found that R.C. §2151.414(B)(1)(a)-(c),(e) do not apply to either parent, but R.C. §2151.414(B)(1)(d) does apply.

**Best Interest of the Child**

{¶34} In determining the best interest of the child at a permanent custody hearing, R.C. §2151.414(D)(1) mandates the trial court must consider all relevant factors, including, but not limited to, the following:

(a)      The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b)      This wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard to the maturity of the child;

(c)      The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d)      The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

**{¶35}** No one element is given greater weight or heightened significance. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816.

**{¶36}** In the case *sub judice*, we note the trial court found that C.G. is very bonded to Appellant, B.G., and the foster family. The trial court further found Appellant and B.G. have not shown that they can maintain their sobriety, employment, and housing outside of a highly structured environment. The trial court also notes Appellant and B.G. lost custody of older children. The trial court has also found that for over the past year Appellant and B.G. have successfully worked the case plan, maintained sobriety, gained employment, participated and completed mental health counseling, substance abuse counseling, and parenting classes.

**{¶37}** What is also noted is that the Agency has not pointed to any part of the case plan where Appellant or B.G. were deficient in the prior year, unlike with their other children's case plan where neither engaged with the Agency. In addition, the Guardian ad Litem does not recommend permanent custody be granted to the Agency. He feels Appellant and B.G. should be given an opportunity to show they can maintain their sobriety, employment, and safe living arrangements.

**{¶38}** Appellee's argument at the permanent custody hearing focused on the need for C.G. to have a permanent, stable living arrangement. However, no one element is given greater weight or heightened significance. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816. Appellant and B.G. have been meeting the goals and objectives of the case plan for more than the past year with no deficiency or shortcomings noted by

the Agency. Yet the Agency did not find reunification possible. We fail to see how the case plan was designed in a way to achieve reunification, and how reasonable efforts were made at reunification as required by R.C. §2151.419(A)(1). The case plan should have been designed to provide sufficient time to show their ability to maintain their sobriety, employment, and a safe, permanent, and stable living arrangement for C.G.

{¶39}  Based upon the foregoing, we find the evidence was insufficient to grant the Agency's motion for permanent custody.

{¶40}  Accordingly, Appellant's second Assignment of Error is sustained.

**I.**

{¶41}  Based upon our disposition in Appellant's second Assignment of Error, we decline to address Appellant's first Assignment of Error.

{¶42}  For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division of Fairfield County, Ohio, is reversed and remanded for further proceedings consistent with this opinion.

By: Wise, J.

Gwin, P. J., and

King, J., concur.

JWW/br 1019